UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., <br> *Plaintiff*, <br><br> v. <br><br> TYLER TEXAS LODGING, LLC, et al., <br><br> *Defendants*. | Civil Action No. 15-3692 <br><br> **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court by way of Plaintiff Howard Johnson International, Inc.'s ("HJI") Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendants Tyler Texas Lodging, LLC ("Texas Lodging") and Joseph Garrison ("Garrison"). Dkt. No. 11. For the reasons stated below, the motion is **GRANTED**.

**I.     BACKGROUND**

HJI is a Delaware corporation with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1, Dkt. No. 1. It licenses the operation of Howard Johnson hotels. Id. ¶ 9. Defendant Texas Lodging is a Texas limited liability company with its principal place of business in Texarkana, Texas. Id. ¶ 2. Defendant Garrison is a citizen and resident of Texas, and lives in Texarkana, Texas. Id. ¶ 3. On March 31, 2009, HJI and Texas Lodging entered into a franchise agreement ("Franchise Agreement") for the operation of a 91-room Howard Johnson hotel (the "Facility") in Tyler, Texas. Id. ¶ 9.

Pursuant to the Franchise Agreement, Texas Lodging was obligated to operate the Facility

1

for a fifteen-year term.  Id. ¶ 10.  In operating the Facility, Texas Lodging was required to make periodic payments to HJI for royalties, system assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, "Recurring Fees"), id. ¶ 11; prepare and submit monthly reports to HJI disclosing, among other things, the amount of gross revenue earned at the Facility, id. ¶ 13; and maintain accurate financial information relating to the gross room revenue, and allow HJI to examine, audit, and make copies of the financial information, id. ¶ 14. The Franchise Agreement states that any delinquent amounts owed would be assessed interest at a rate of 1.5% per month, or the maximum rate allowed by law, whichever is less.  Id. ¶ 12.

Pursuant to section 11.2 of the Franchise Agreement, HJI could terminate the Franchise Agreement, without notice to Texas Lodging, if Texas Lodging (a) failed to pay any amount due to HJI under the Franchise Agreement, (b) failed to remedy any other default of its obligations or warranties under the Franchise agreement within thirty days after receipt of written notice from HJI specify one or more defaults, or (c) received two or more notices of default under the Franchise Agreement in any one-year period, whether or not the defaults were cured.  Id. ¶ 15.  In the event of termination under section 11.2, Texas Lodging agreed to pay $1,000 in liquidated damages for each guest room at the Facility that Garrison was authorized to operate at the time of termination. Id. ¶¶ 16-17.

On March 31, 2009, HJI and Texas Lodging entered into a Connectivity Equipment Lease and Services Addendum ("Connectivity Addendum").  Id. ¶ 19.  Pursuant to section 12(c) of the Connectivity Addendum, Texas Lodging agreed to pay liquidated damages in the event the Connectivity Addendum terminated by virtue of termination of the Franchise Agreement.  Id. ¶ 20.  Effective as of the date of the Franchise Agreement, Garrison provided HJI with a personal

2

guaranty (the "Guaranty") of Texas Lodging's obligations under the Franchise Agreement.  Id. ¶ 21.  Pursuant to the terms of the Guaranty, Garrison agreed, among other things, to immediately make each payment and perform or cause Texas Lodging to perform, each unpaid or unperformed obligation of Texas Lodging under the Franchise Agreement.  Id. ¶ 22.

Texas Lodging repeatedly failed to timely meet its financial obligations to HJI, in breach of the Franchise Agreement.  Id. ¶ 23.  On December 1, 2011, HJI sent Texas Lodging a letter advising that (a) it was in breach of the Franchise Agreement because it owed HJI approximately $37,081.66 in outstanding Recurring Fees, (b) it had ten days to cure the breach, and (c) the Franchise Agreement would be subject to termination if the breach was not cured.  Id. ¶ 25.

On January 25, 2012, HJI sent Texas Lodging a letter advising that (a) it was in breach of the Franchise Agreement because it owed HJI approximately $42,126.63 in outstanding Recurring Fees, (b) it had ten days to cure the breach, and (c) the Franchise Agreement would be subject to termination if the breach was not cured.  Id. ¶ 26.

On March 30, 2012, HJI sent Texas Lodging a letter advising that it was required to pay HJI $90,000 as liquidated damages for premature termination of the Franchise Agreement as well as all outstanding Recurring Fees through the date of termination.  Compl. ¶ 27.

HJI filed the instant lawsuit on June 2, 2015, seeking to recover all unpaid fees.  Dkt. No. 1.  Defendants failed to answer or otherwise defend against the Complaint.  On September 15, 2015, HJI petitioned the Clerk of the Court for an entry of default against Garrison and Texas Lodging pursuant to Fed. R. Civ. P. 55(a).  Dkt. No. 6.  The Clerk of the Court entered default against both Defendants that day.  On December 23, HJI moved for entry of default judgment against Garrison and Texas Lodging.  Dkt. No. 11.

3

## II.     STANDARD OF REVIEW

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

Additionally, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III.     ANALYSIS

### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendants. Subject matter jurisdiction here is present pursuant to diversity under 28 U.S.C. § 1332. Defendant Texas Lodging is a Texas corporation with its principal place of business in

Texarkana, Texas; Defendant Garrison is a citizen of Texas; and Plaintiff is a Delaware corporation with its principal place of business in Parsippany, New Jersey.  Compl. ¶¶ 1-2.  The amount in controversy exceeds the required $75,000.  Fenimore Aff. ¶ 31, Dkt. No. 11-3.  The Court has personal jurisdiction over Defendants based upon consent to jurisdiction in this district in the Franchise Agreement and Guaranty.  See id. Ex. A ¶ 17.6.3; id. Ex. D.

The Court also finds that service was proper.  HJI was unable to personally serve Defendants, and submitted an Affidavit of Diligent Efforts reflecting its attempt to do so.  Couch Cert. Ex. A, Dkt. No. 11-2.  Service was made on Defendants by sending copies of the Summons and Complaint via certified and regular mail pursuant to New Jersey Court Rules for substituted service.  See N.J. Ct. R. 4:4-4; Couch Cert. ¶¶ 4-6.  Thus, the Court is satisfied that it has jurisdiction to enter default judgment and that Defendants were properly served.

**B. Liability**

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  Comdyne I, 908 F.2d at 1149.  The Complaint pleads facts which, taken as true, establish Defendants' liability for breach of contract.[1]

In New Jersey, a plaintiff must allege three elements to state a cause of action for breach of contract: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach.[2]  AT&T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999).  Here,

---

[1] Plaintiff's other causes of action—including unjust enrichment—would not alter the damages in this case, so the Court does not analyze the sufficiency of those pleadings.

[2] Although the franchise at issue was located in Texas, the Franchise Agreement provides that the agreement shall be governed by and constructed under New Jersey law.  Fenimore Aff. Ex. A ¶ 17.6.1.

Plaintiff has alleged that (1) there was a contractual relationship with Defendants based on the Franchise Agreement, Connectivity Addendum, and the Guaranty, Compl. ¶¶ 9-23; (2) Texas Lodging breached the Franchise Agreement and Connectivity Addendum when it failed to pay outstanding Recurring Fees and liquidated damages, id. ¶¶ 24-27, 35-38; (3) Garrison breached the Guaranty when he failed to fulfill Texas Lodging's obligations under the Franchise Agreement and Connectivity Addendum, id. ¶¶ 52-54; and (4) Plaintiff suffered resulting damages, Fenimore Aff. ¶ 31.  Therefore, Plaintiff has sufficiently alleged a cause of action for breach of contract.

### C. Appropriateness of Default Judgment

Next, the Court must consider (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default.  Doug Brady, 250 F.R.D. at 177.  The Court concludes that in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense.  See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012).  Second, the Court finds that Plaintiff will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief.  Finally, the Court finds that Defendants acted culpably as they has been served with the Complaint, are not infants or otherwise incompetent, and are not presently engaged in military service.  See Couch Cert. ¶ 11; Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

### D. Monetary Damages

Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, Plaintiff must prove damages. See Comdyne I, 908 F.2d at 1149. If the damages are for a sum which can be made certain by computation, inquiry into extrinsic evidence is unnecessary. See id. After reviewing the Franchise Agreement, the Connectivity Addendum, the Guaranty, and the Certification of Bryan Couch, Esq. and Affidavit of Suzanne Fenimore, the Court is satisfied that HJI's requests for Recurring Fees, liquidated damages, and prejudgment interest can be made certain by formulas specified in the Franchise Agreement. Therefore, proof of these sums requires only computation.

Here, HJI seeks judgment in the amount of $304,663.20.[3] Fenimore Aff. ¶ 31. This consists of (1) $90,122.83 in overdue Recurring Fees, (2) $92,500 in liquidated damages, and (3) $122,040.37 in prejudgment interest. See id. ¶¶ 22-31; id. Exs. H-I. Plaintiff proves it is entitled to the Recurring Fees it requests by providing an itemized statement of the overdue amounts for a total of $90,122.83. See id. Exs. H-I. Plaintiff proves liquidated damages as well. Under sections 12.1 and 18.2 of the Franchise Agreement and section 12(c) of the Connectivity Addendum, Defendants owe $92,500 in liquidated damages for prematurely terminating the Franchise Agreement.[4] See id. Ex. A. "No further evidence is required to substantiate this amount." Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC, No. 06-1581, 2007 WL 1674485,

---

[3] HJI does not request attorneys' fees and costs, nor does it submit any documentation addressing the issue. Dkt. No. 11.

[4] Liquidated damages under section 12.1 and 18.2 of the Franchise Agreement are set at $90,000 because Texas Lodging agreed to pay $1,000 in liquidated damages for each guest room at the Facility Garrison was authorized to operate at the time of termination. Fenimore Aff. ¶ 27. At the time HJI terminated the Franchise Agreement, Texas Lodging was authorized to operate ninety rooms at the facility. Id.

at *6 (D.N.J. June 8, 2007). Finally, section 7.3 of the Franchise Agreement entitles Plaintiff to prejudgment interest on past-due recurring fees and damages at a rate of 1.5 percent per month "accruing from the due date until the amount is paid." Fenimore Aff. Ex. A ¶ 7.3. The invoice dates from which the past-due Recurring Fees began accruing interest range from April 2010 to July 2014; Defendants owe $59,997.17 in interest related to these fees. Id. Ex. H. The liquidated damages have been overdue from April 29, 2012 to January 19, 2016, and have accrued interest in the amount of $62,043.20. Id. ¶ 30. The total amount of interest due is $122,040.37.

The combination of the overdue Recurring Fees, liquidated damages, and accrued interest equals the damages Plaintiff requests. Therefore, HJI is entitled to default judgment in the total amount of $304,663.20.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment, Dkt. No. 11, is **GRANTED**. An appropriate order accompanies this opinion.

Dated: June 16, 2016                   */s Madeline Cox Arleo*
                                       **MADELINE COX ARLEO**
                                       **United States District Judge**